UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARESSA LAVOIE BLACK,<br><br>         Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>         Defendant. | Case No. 1:23-cv-01159-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 12). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for disability and supplemental security income benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 10).

Plaintiff argues as follows:

   1. The ALJ's residual functional capacity [RFC] assessment is not supported by substantial evidence.

   2. The ALJ failed to provide clear and convincing reasons to reject the subjective limitations of [Plaintiff].

(ECF No. 12, pp. 5, 10 (minor alterations).

1

Having reviewed the record, administrative transcript, parties' briefs, and the applicable law, the Court finds as follows.

# I. ANALYSIS

## A. RFC

Plaintiff's first issue generally argues that the RFC is not supported by substantial evidence as "[t]he ALJ erred in giving the greatest weight to Dr. Kwock's opinion because [it] was not consistent with or supported by the record and because Dr. Kwock did not offer an opinion as to the limitations due to the residual limitations from the radical mastectomy." (ECF No. 12, p. 6). Some background information is helpful to understanding this issue.

### 1. Background

The ALJ initially denied Plaintiff benefits in August 2019. (A.R. 84). In connection with the proceedings, the ALJ solicited the testimony of Dr. Arnold Ostrow, a medical expert who offered testimony as to "some of the internal medicine issues" at the hearing. (A.R. 1213; *see* A.R. 78, 135). Pertinent here, Dr. Ostrow opined that Plaintiff was capable of light work but that he would restrict her "to no lifting, pulling, pushing with frequent handling, fingering and gripping and manipulating on the right [upper extremity]" but the left upper extremity had no restrictions. (A.R. 142). The ALJ gave the greatest weight to Dr. Ostrow's opinion and the RFC limited Plaintiff to light work and "no pushing or pulling with the right upper extremity" and "no more than frequent use of the right upper extremity for all other motions"; however, the ALJ did not address Dr. Ostrow's opined restriction that Plaintiff could not *lift* with her right upper extremity. (A.R. 81, 83-84).

The denial of benefits led to Plaintiff filing a case before this Court, *Black v. Commissioner of Social Security*, 1:20-cv-01166-EPG. Ultimately, the parties filed a stipulation to remand the case pursuant to Sentence Four of 42 U.S.C. § 405(g). (ECF No. 28). The Court approved the stipulation, which provided as follows: "On remand, the Commissioner will further develop the record as necessary, and issue a new decision." (ECF No. 29, p. 1). In its remand order, the Appeal Council stated, in relevant part, as follows:

The hearing decision does not contain an adequate evaluation of the opinion

> evidence of record. In support of the assessed residual functional capacity (RFC), the Administrative Law Judge assigned the greatest weight to the opinion of medical expert, Dr. Arnold Ostrow, M.D. (Decision, pages 6-7). However, the opinion offered by Dr. Ostrow during the hearing included a limitation that the claimant could do no lifting with the right upper extremity (Decision, page 6 and hearing recording 8:31:30 a.m. - 8:32:00 a.m.). This limitation was not included in the discussion of Dr. Ostrow's opinion, nor was it incorporated into the RFC assigned to the claimant (Decision, pages 4-5 and 6-7). No explanation was provided as to why this more restrictive lifting limitation opined by Dr. Ostrow was not adopted despite his opinion being assigned the greatest weight. Pursuant to Social Security Ruling 96-8p, where the assessed residual functional capacity "conflicts with an opinion from a medical source, the [Administrative Law Judge] must explain why the opinion was not adopted." Here, the Administrative Law Judge does not acknowledge this additional limitation or provide rationale as to why such a limitation is unsupported. Further consideration is warranted.

(A.R. 1283).

At the new hearing, the ALJ acknowledged that Dr. Ostrow had previously addressed some of the internal medicine issues but noted that Dr. John Francis Kwock had been brought in as a medical expert "to assist us on the orthopedic problem." (A.R. 1213). Dr. Kwock testified as to Plaintiff's orthopedic limitations and found her capable of light work albeit with some restrictions. (A.R. 1218). Notably, Dr. Kwock opined that Plaintiff "can still lift and carry up to 10 pounds frequently and up to 25 pounds occasionally" and that "such things as overhead reaching, lateral reaching, handling, fingering, feeling, pushing, and pulling with the arms have no limitations and can be done bilaterally." (A.R. 1218).

In the decision (*i.e.*, the current ALJ opinion at issue), the ALJ gave Dr. Kwock's opinion the "greatest weight," limiting Plaintiff to light work with some additional limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: no more than frequently pushing and pulling with the feet, climbing stairs and ramps, balancing, and kneeling; no more than occasionally climbing ladders and scaffolds, stooping, and crouching; and no more than occasional exposure to heights and heavy moving machinery.

(A.R. 1196, 1199). The ALJ concluded that Plaintiff was capable of her past work as a loan interviewer. (A.R. 1200).

Notably, the ALJ did not include in the RFC the upper right extremity limitations that Dr. Ostrow had suggested, but the ALJ still accepted other aspects of his opinion:

3

> The medical treatment evidence does not support Dr. Ostrow's opinion that the claimant cannot perform any lifting with her right upper extremity. Other than physical therapy and epidural injections for her cervical spine, the claimant has only received a short term of pain management therapy. More importantly, the medical record is devoid of treatment after February 2020 and she has not been recommended surgery. *Although Dr. Ostrow's opinion regarding the preclusion of lifting with the right upper extremity is given little weight, the remainder of his opinion is generally consistent with the claimant's treatment at the time*. Therefore, it is given some weight.

(A.R. 1199) (emphasis added).

The ALJ likewise gave greater weight to Dr. Kwock's opinion than opinions from State Agency medical consultants:

> At the initial level, State Agency medical consultants opined the claimant could lift and/or carry 10 pounds occasionally and frequently, stand and/or walk four hours and sit six hours out of an eight-hour workday, occasionally perform postural activities, never climb ladders, ropes, or scaffolds, must avoid concentrated exposure to cold, vibration, and hazards (Ex. 1A; 3A). At the reconsideration level, they also opined there was insufficient evidence prior to December 31, 2015 to evaluate the claimant's Title II application (Ex. 5A). With regard to the claimant's Title XVI application, they opined the claimant could lift and/or carry 10 pounds occasionally and frequently, stand and/or walk four hours and sit six hours out of an eight-hour workday, recommended use of a cane for ambulation, occasional push and pull with the bilateral lower extremities, occasionally perform postural activities, never climb ladders, ropes, or scaffolds, and must avoid even moderate exposure to extreme cold, extreme heat, vibration, and hazards (Ex. 7A). The sedentary lifting restrictions and standing and/or walking four hours only are inconsistent with the claimant's generally conservative treatment, her negative EMG/NCV test, and her lack of treatment after February 2020. Therefore, the undersigned gives greater weight to the opinion of Dr. Kwock above.

(A.R. 1199-1200).

## 2. Legal Standards

With this background in mind, the Court notes that Plaintiff's applications were filed in January 2017. While the Court acknowledges that caselaw regarding the relevant regulations for applications filed in this time period required "according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant," there are no treating or examining physician opinions at issue here. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Both Ostrow and Kwock were medical experts brought in to testify at the hearings and the State Agency medical consultants only reviewed pertinent portions of the record.

1 Accordingly, the requirement to provide "specific and legitimate reasons that are supported by
2 substantial evidence" to reject "a treating or examining doctor's opinion [that] is contradicted by
3 another doctor's opinion" does not apply. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir.
4 2005).

5 However, "[t]he opinions of non-treating or non-examining physicians may . . . serve as
6 substantial evidence when the opinions are consistent with independent clinical findings or other
7 evidence in the record. [But] [t]he ALJ need not accept the opinion of any physician . . . if that
8 opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v.
9 Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). "The Commissioner may reject the opinion of a
10 non-examining physician by reference to specific evidence in the medical record." *Sousa v.
11 Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

12 A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20
13 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2,
14 § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the
15 capacity for sustained performance of the physical-mental requirements of jobs"). "In
16 determining a claimant's RFC, an ALJ must consider all relevant evidence in the record,
17 including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain,
18 that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec.
19 Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). In
20 reviewing findings of fact with respect to RFC assessments, this Court determines whether the
21 decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means
22 "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a
23 preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such
24 relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
25 *Richardson*, 402 U.S. at 401 (internal citation omitted).

26        **3.**      **Analysis**

27 The Court turns to Plaintiff's argument that the RFC is not supported by substantial
28 evidence because the ALJ erred in giving greatest weight to Dr. Kwock's opinion. First, Plaintiff

1    argues that Dr. Kwock's testimony—that the imaging of Plaintiff's cervical spine only shows
2    very mild or minimum findings—"conflicts with the record that documents that x-ray from 2016
3    of the cervical spine revealed advanced spondylosis at C5-C6" and "[a] November 2016 MRI
4    [that] showed moderate left foraminal stenosis at C6-C7." (ECF No. 12, p. 6). Citing minimal and
5    mild findings in the record, Defendant responds that, "[t]he fact among numerous notations of
6    mild findings, imaging also showed some indications of more than mild degeneration in specific
7    areas of the spine does not mean the evidence reflects moderate or advanced degenerative
8    changes as a whole and does not establish that the person is severely restricted." (ECF No. 16, p.
9    5). The Court agrees with Defendant.
10        At the hearing, Dr. Kwock testified that he had the opportunity to review Plaintiff's
11   medical record. (A.R. 1214). And over the course of Plaintiff's treatment history, Dr. Kwock
12   noted that there were changes regarding her cervical spine but ultimately she had "minimal to
13   mild degenerative disc and degenerative joint disease present in the cervical spine." (A.R. 1217).
14   While Plaintiff identifies two instances of more than mild findings, the record as a whole supports
15   Dr. Kwock's characterization of the record. (*See* A.R. 802-03, 1163, 1185 generally noting mild
16   findings). Moreover, Dr. Kwock ultimately concluded that, "[f]rom a musculoskeletal standpoint,
17   restrictions or limitations [were] warranted," and opined on Plaintiff's lifting and carrying
18   abilities being "up to 10 pounds frequently and up to 25 pounds occasionally." (A.R. 1218). Thus
19   Dr. Kwock did find that some limitations were warranted, but not lifting with her right upper
20   extremity was not completely limited. (A.R. 142, 1218). And it is worth noting that Dr. Ostrow
21   was the only medical provider who offered such an opinion—Plaintiff had no treating medical
22   opinion stating that she could not lift anything. Moreover, the state agency consultants opined that
23   Plaintiff was capable of lifting and carrying, although their assessment of the weight Plaintiff
24   could handle was slightly less than what Dr. Kwock opined. (A.R. 1199-1200).
25        Plaintiff also argues that the ALJ "erred in basing the RFC assessment on the opinion of
26   Dr. Kwock when Dr. Kwock only assessed limitations based on the orthopedic issues" and "did
27   not offer an opinion as to the limitations due to the residual limitations from the radical
28   mastectomy." (ECF no. 12, pp. 6, 7). Defendant responds that "Plaintiff identifies no evidence

establishing that Plaintiff's mastectomy resulted in limitations, let alone limitations beyond the reduced range of light work that the ALJ assessed based on the record as a whole." (ECF No. 16, p. 4). The Court agrees. While Plaintiff indicates that there were limitations resulting from Plaintiff's mastectomy that Dr. Kwock did not address, Plaintiff fails to identify any limitations, let alone argue why additional limitations were warranted in the RFC. Without any developed argument, the Court cannot find error. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) (finding no error where the claimant did "not detail what other physical limitations follow from the evidence of his knee and should injuries, besides the limitations already listed in the RFC").

Plaintiff next argues that the ALJ improperly rejected one aspect of Dr. Ostrow's opinion—that Plaintiff could not lift anything with her right upper extremity. (ECF No. 12, p. 7). First, Plaintiff argues that it was error for the ALJ to reject this opinion based on the lack of treatment records after February 2020.

> However, Black turned 65 in 2020 and started receiving retirement benefits. AR 1212. When ALJ Reason asked about new records at the 2022 hearing, Black's counsel reminded the ALJ that Black was already receiving retirement benefits. *Id.* Later in the hearing, the ALJ acknowledged Black's reason for not submitting new evidence. AR 1219. Instead of taking any tiny step to more fully develop the record-such as tell Black that she needed records past her retirement date, the ALJ waited until after the hearing and tried to pull the rug out from under Black by stating that the "most important" reason for rejecting Dr. Ostrow's opinion (as well as the subjective limitations) was that there was no evidence after 2020.

(*Id.* at 7).

However, Plaintiff argument fails for two reasons. First, Plaintiff cites no authority, and the Court has not located any, stating that Plaintiff is relieved of her general responsibility to submit evidence in support of a disability claim because she has started receiving retirement benefits. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."). Second, Plaintiff improperly characterizes the ALJ as attempting to "pull the rug out from under [her]." On the contrary, at the hearing, the ALJ noted that "about three years' worth of records" were missing. (A.R. 1212). Plaintiff's attorney responded that Plaintiff began receiving retirement

benefits, and the ALJ stated, "I understand that. But I don't have any records for the last three years is what I'm saying. But you're prepared to go forward on this record?" (A.R. 1212). Counsel responded, "I don't think we need any new records, Your Honor." (A.R. 1212). Thus, the ALJ noted that the missing records were an issue and gave counsel a chance to address it, but counsel chose to proceed anyway stating that new records were not needed.

Next, Plaintiff takes issue with the ALJ's discounting of Dr. Ostrow's lifting limitation because "[o]ther than physical therapy and epidural injections for her cervical spine, the claimant has only received a short term of pain management therapy." (A.R. 1199). As an initial matter, the Court concludes that, for the reasons given above, the ALJ reasonably decided to favor Dr. Kwock's opinion that Plaintiff could lift with her right upper extremity over Dr. Ostrow's opinion. (*See* A.R. 1199 – "Dr. Kwock is an expert witness before the Social Security Administration. Therefore, he has knowledge of the disability program and had access to all of the medical evidence of record, including the claimant's testimony, giving him the greatest longitudinal view of the claimant's condition when he offered his opinion."). Regardless, Plaintiff's arguments that the ALJ otherwise improperly discounted Dr. Ostrow's opinion fail.

First, Plaintiff states that her "pain management from California City Clinic and Advanced Pain Management spanning from October 2014 through at least January 2019 is not appropriately characterized as 'short term.'" (ECF No. 12, p. 8, citing A.R. 550-821 and 1160-1177). The Court has reviewed the records cited by Plaintiff and the majority do not relate to a pain management therapy, but instead concern other things, like Plaintiff's breast cancer and her diabetes. (*See, e.g.*, A.R. 596, 608, 628, 637, 658, 736, 749, 755, 790, 800, 811). Moreover, to the extent that Plaintiff indicates that she complained of pain in these records and received medication, such is not the target of the ALJ's argument. Rather, the ALJ was referring to Plaintiff "receiving *pain management therapy* for a short period between September 2018 through March 2019." (A.R. 1198, citing Ex. 18F comprising A.R. 1160-1177; *see* ECF No. 12, p. 8, citing A.R. 1160-1177). The Court concludes that the ALJ fairly characterized this six-month period of pain management as short-term in rejecting Dr. Ostrow's opinion that Plaintiff could not lift at all with her right upper extremity.

Lastly, Plaintiff argues that the ALJ improperly discounted the opinions of State agency medical consultants, who opined that Plaintiff was capable of some lifting, contrary to Dr. Ostrow's opinion, but no more than 10 pounds, and recommended the use of a cane. Once again, for the reasons given above, the Court concludes that the ALJ reasonably relied on Dr. Kwock's opinion over all other medical opinions. Among other things, Plaintiff's lack of treatment after February 2020 and her "generally conservative treatment" indicated that she was capable of light work, which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

In conclusion, the Court concludes that the ALJ reasonably favored Dr. Kwock's opinion over other medical opinions in the record, and the RFC is supported by substantial evidence.

### B.     Plaintiff's subjective complaints

Plaintiff argues that "[t]he ALJ failed to provide clear and convincing reasons to reject [her] subjective limitations." (ECF No. 12, p. 10). Defendant argues that the ALJ properly discounted the degree of Plaintiff's subjective complaints. (ECF No. 16, p. 10).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir.

1995); *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our next task is to determine whether the ALJ's adverse credibility finding of Carmickle's testimony is supported by substantial evidence under the clear-and-convincing standard.").

As to Plaintiff's subjective complaints, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 1197). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

In formulating the RFC, the ALJ noted Plaintiff's subjective complaints but discounted their degree of severity:

> The claimant testified at the initial hearing that she has been unable to work due to excruciating back pain starting in 2010 and has been receiving pain medication since 2007. She testified to receiving an epidural injection every two to three months and that her back and knee pain were so severe that walking was painful. Additionally, she reported difficulty gripping with her hands.
>
> With regard to her musculoskeletal impairments, a May 2015 lumbar spine MRI showed multilevel degenerative changes with moderate stenosis at L4-L5 and moderate to severe stenosis at L5-S1 (Ex. 10F/43). An October 2016 progress note showed no neck tenderness, full range of motion, no lumbar pain, and good muscular tone (Ex. 12F; 17F). An October 2016 cervical spine x-ray showed advanced spondylosis at C5-C6 and a November 2016 cervical spine MRI showed mild disc bulges at C4-C7 with moderate left foraminal stenosis at C6-C7 (Ex. 10F/250; 18F/2). An October 2016 lumbar spine x-ray showed degenerative disc disease at L5-S1 (Ex. 10F/248). A November 2016 lumbar spine MRI showed mild disc bulges at L3-S1 with mild bilateral foraminal encroachment at L3-L4, severe bilateral facet arthrosis, mild spinal canal stenosis, moderate bilateral foraminal encroachment at L4-L5, and severe bilateral facet arthrosis and severe left and moderate right foraminal stenosis at L5-S1 (Ex. 10F/246; 18F/2). A November 2016 examination report showed the claimant denied any associated numbness and tingling with her low back pain (Ex. 9F). A November 2016 EMG and nerve conduction study showed bilaterally absent H-reflexes but noted this may be a normal variant and as a sole finding was nondiagnostic (Ex. 9F). The remainder of the nerve conduction study was normal. Further, the study also showed a normal EMG examination of the lower extremities with no findings for lumbar radiculopathy (Ex. 9F/2).
>
> The claimant began receiving pain management therapy for a short period between

> September 2018 through March 2019 (Ex. 18F). Her progress notes show she consistently complained of neck pain radiating to her left arm and low back pain radiating down to her right leg with positive straight leg raise tests (Ex. 18F). The undersigned notes that during this period, another physical examination for a cholecystectomy showed no neck tenderness, full range of motion, no lumbar pain, and that her musculoskeletal condition was normal for age with good muscle tone (Ex. 17F/8). She was prescribed Tylenol, Flexeril, Motrin, and Meclizine (Ex. 18F/3). She received a left lumbar spine injection in November 2018 and January 2019 and a cervical spine epidural injection in April 2019 (Ex. 18F). A March 2019 lumbar spine MRI showed L5-S1 intervertebral disc desiccation, disc space height loss, and endplate degenerative changes (Ex. 20F/25). A March 2019 cervical spine MRI showed C5-C6 and C6-C7 degenerative disc disease with mild left neural foraminal narrowing (Ex. 20F/26). An April 2019 right knee MRI showed minimal patellar enthesopathy, posterior horn medial meniscus tear, suprapatellar space effusion, low-grade MCL sprain, and periarticular soft tissue inflammatory changes (Ex. 21F/14). She has not been recommended surgery.
>
> Despite the claimant alleging the inability to grip objects, an August 2019 left wrist x-ray was normal (Ex. 20F/30). A November 2019 progress note indicated the claimant had normal range of motion but exhibited tenderness and no edema (Ex. 21F/18). Yet a November 2019 right hand x-ray was normal (Ex. 21F/32). The diagnostic images for her cervical spine do not support any nerve root impingement and there are no EMG/NCV tests supporting radiculopathy. More importantly, the undersigned emphasizes that there has been no evidence of any treatment after February 2020. The claimant and her representative did not provide an explanation for the lack of treatment other than that the claimant was already receiving retirement benefits.

(A.R. 1197-98). And as noted above, the ALJ elsewhere described Plaintiff's treatment as "generally conservative." (A.R. 1200).

Such discussion shows that the ALJ considered Plaintiff's subjective complaints but ultimately did not find them to cause disabling symptoms because there was a lack of objective medical support for Plaintiff's complaints, including no evidence of treatment after February 2020, the medical examinations often showed normal findings, and Plaintiff had relatively conservative treatment. Such reasoning is valid.

First, even though the lack of supporting evidence cannot be the sole basis to discount testimony, it can be a factor. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the

severity of the claimant's pain and its disabling effects."). Moreover, the ALJ properly relied on evidence inconsistent with disability to discount Plaintiff's complaints, *e.g.*, her normal medical examinations. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (noting that a conflict between daily activities and medical opinion may justify discounting medical opinion); *Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). Further, it was not unreasonable for the ALJ to characterize the treatment that Plaintiff received, even though it included epidural injections, as "generally conservative," given Plaintiff's disabling complaints of pain. *See Weikel v. Berryhill*, No. 1:16-CV-01336-SKO, 2018 WL 1142194, at *16 (E.D. Cal. Mar. 2, 2018) ("While injections, by themselves, have been found not to constitute conservative treatment, courts have frequently found that the fact that Plaintiff has been prescribed narcotic medication or received injections does not negate the reasonableness of the ALJ's finding that Plaintiff's treatment *as a whole* was conservative, particularly when undertaken in addition to other, less invasive treatment methods.") (citations omitted).

In conclusion, the Court concludes that the ALJ did not error in discounting Plaintiff's subjective complaints.

## II.    CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. The Clerk of Court is directed to enter judgment in favor of the Commissioner of Social Security and to close this case.

IT IS SO ORDERED.

Dated:   **February 29, 2024**                /s/ Erica P. Grosjean
                                              UNITED STATES MAGISTRATE JUDGE